IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GREGORY PREECE, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff | § § | Civil Action No. 1:22-cv-445 |
| v. | § § | |
| NELSON LEWIS, INC. | § § | |
| Defendant | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Gregory Preece ("Named Plaintiff" or "Plaintiff") on behalf of himself and all others similarly situated (Named Plaintiff and potential FLSA Opt-In Plaintiffs are collectively referred to herein as "Plaintiffs") brings this suit against the above-named Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as amended. Plaintiff shows as follows:

### I.   NATURE OF SUIT

1.   The FLSA was passed by Congress in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne,* 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207(a)).

2. Defendant Nelson Lewis, Inc. ("Defendant" or "Nelson Lewis") has violated the FLSA by failing to pay its hourly-paid bore crew and pipe crew workers at time-and-one-half their regular rates of pay for all hours worked in excess of forty hours within a workweek. It has done so by knowingly permitting its hourly-paid bore crew and pipe crew workers to engage in compensable preparatory and concluding work, compensable travel during the continuous workday, and other compensable work tasks, but nevertheless intentionally refusing to pay for that time.

3. Because there are other putative plaintiffs who are similarly situated to the Named Plaintiff with regard to the work performed and the Defendant's compensation policies, Named Plaintiff brings this action as an opt-in collective action under 29 U.S.C. § 216(b).

## II.   PARTIES

4. Named Plaintiff Gregory Preece is an individual who resides in Llano County, Texas. He has consented to be a party-plaintiff in this action. His consent form is attached as Exhibit A.

5. Defendant Nelson Lewis, Inc. is a Texas for-profit corporation that is authorized to do business in Texas and that is doing business in Texas. Defendant maintains its principal office in Marble Falls, Burnet County, Texas, and can be served with process by service on its registered agent, Henry T. Lewis, at 450 East FM 1431, Marble Falls, TX 78654.

## III.   JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction in this matter under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law—specifically, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. This Court also has personal jurisdiction over all parties to this action.

7. Venue is proper in the Austin Division of the United States District Court for the Western District of Texas. A substantial part of the events forming the basis of this suit occurred in Burnet County, Texas, which is in this District and Division. Named Plaintiff Preece was an employee of

Defendant, and he has performed work for Defendant in Burnet County, Texas. Defendant is subject to this Court's personal jurisdiction with respect to this civil action. Defendant thus resides in this district and division. 28 U.S.C. §1391(c). Venue in this Court is therefore proper under 28 U.S.C. § 1391(b).

### IV.   COVERAGE UNDER THE FLSA

8.   At all relevant times, Defendant has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

9.   At all relevant times, Plaintiffs were "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) whom Defendant at all relevant times "employ[ed]" within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g).

10.   At all relevant times, Defendant has been engaged in an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

11.   At all relevant times, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant is an enterprise and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

12.   In the performance of their work, Plaintiffs handled tools, equipment, and other materials that were manufactured outside of the State of Texas, including, for example, heavy machinery, company vehicles, drilling equipment, and hand tools.

13. At all relevant times, Plaintiffs were engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §207.

## V. FACTUAL ALLEGATIONS

14. Defendant Nelson Lewis, Inc. is a construction company specializing in underground utilities and excavation, including trenching and horizontal directional drilling.

15. Named Plaintiff Preece was employed by Defendant from approximately March 2020 until approximately September 2021, with a short break in employment of about three days in or around January 2021.

16. From the beginning of his employment until about January 2021, Named Plaintiff Preece worked for Defendant as a member of Defendant's bore crew.

17. Plaintiff's duties during that period consisted of manual labor assisting with horizontal directional drilling (also known as boring) operations. This work included mixing drilling fluids (also known as drilling mud); loading and unloading drill stem magazines into and out of the drilling rig's stem loader; digging mud out of the entrance pit with hand tools or machinery; operating a vacuum truck or trailer to remove drilling mud and cuttings; driving a water truck or mud truck to haul water or mud to the drilling sites; hauling away dirt in a dump truck; driving the vacuum truck to haul away drilling mud; and performing preparatory and concluding tasks at Defendant's shop at the beginning and end of the workday, including loading and unloading tools and equipment and dumping mud from the vacuum truck or trailer.

18. Other duties performed by members of the bore crew included operating the boring machine; operating a beacon locator to guide the boring machine; operating machinery such as backhoes and excavators; running pipe through tunnels; and picking up supplies from a store or Defendant's shop.

19. From approximately January 2021 until approximately July 2021, Named Plaintiff Preece was assigned primarily to drive a dump truck. During that period, he was not assigned to a single particular crew, but instead he assisted various crews. Named Plaintiff Preece does not claim unpaid wages during the time he was assigned only to drive the dump truck.

20. From approximately July 2021 until the end of his employment, Named Plaintiff Preece was reassigned to Defendant's bore crew. During that time period, he generally performed the same job duties described above with regard to his first stint on the bore crew. Additionally, during that time period, he was assigned to drive the bore crew supervisor, Keenan Lewis, between Lewis's home and work.

21. The duties of Defendant's pipe crew members consisted of digging open trenches using heavy machinery and hand tools (as opposed to underground tunnels dug by the bore crew); hoisting and installing pipe into the trenches; and performing preparatory and concluding tasks at Defendant's shop at the beginning and end of the workday, including loading and unloading tools and equipment.

22. Defendant paid Named Plaintiff Preece and other members of the bore crew and pipe crews an hourly wage.

23. Plaintiffs typically were paid for about 50 to 60 hours of work each week.

24. However, Defendant did not pay Plaintiffs at all for substantial additional amounts of time spent on compensable preparatory and concluding tasks, compensable travel, and other compensable work tasks.

25. Most mornings at the beginning of the shift, Plaintiffs met at Defendant's shop in Marble Falls to load the tools, equipment, and materials they needed for the day's work into company vehicles. Plaintiffs also had to wait in line at the fuel tank at Defendant's shop for their turn to fuel their vehicles and machinery.

26. Plaintiffs typically spent between about 30 to 90 minutes at Defendant's shop each morning loading tools, equipment, and materials, and fueling their vehicles and machinery.

27. Then the Plaintiffs traveled in company vehicles to their jobsites, which were typically between one to two hours away, often in the San Antonio area.

28. Most days, after concluding their work at their jobsites, Plaintiffs drove back to Defendant's shop in company vehicles where they unloaded tools, materials, equipment, and waste products such as used drilling mud.

29. Plaintiffs typically spent between about 15 to 45 minutes unloading tools, materials, equipment, and waste products at Defendant's shop at the end of each workday.

30. Defendant maintained and followed a policy or practice under which it generally only paid Plaintiffs for most, not all, of the time they spent working at their jobsites and only a fraction of their travel time. Defendant did not pay the Plaintiffs for the time they spent loading or unloading materials at Defendant's shop or for much of the time they spent traveling between Defendant's shop and their jobsites.

31. Defendant paid Plaintiffs for travel between Defendant's shop and the jobsite only one way, only when they drove a company vehicle—not when the rode as passengers—and only for a limited amount of time that Defendant dictated for each specific trip, rather than the full amount of actual travel time.

32. The managers on each crew kept time for the crew members and generally marked their supposed stopping time while they were still on the jobsite, often before the day's work on the jobsite was finished. As a result, the Plaintiffs often worked off the clock without pay on their jobsites.

33. Defendant also refused to pay Plaintiffs for other compensable work tasks as well.

34. For example, when Plaintiffs finished one project during a workday and moved to a new project, Defendants generally refused to pay for the time Plaintiffs spent mobilizing and demobilizing the equipment and traveling between jobsites. As an exception, Defendant paid for the travel between jobsites, but not the mobilization or demobilization time, on a few occasions when Named Plaintiff Preece complained about it.

35. As another example, Plaintiffs sometimes were required to purchase tools or materials needed for work from stores on their way to or from their jobsites, but they were not paid for the time making those purchases.

36. As another example, from about July 2021 until the end of his employment, Named Plaintiff Preece was assigned to drive his supervisor Keenan Lewis from home to work. Preece was required to first report to Defendant's shop in Marble Falls each day in order to get a company pickup truck, then drive to Lewis's home in Kyle to pick him up and drive him to the jobsite. At the end of the day, Preece drove Lewis back to Kyle, then drove back to Defendant's shop to drop off the company pickup. Preece was not paid for the time he spent driving between Defendant's shop in Marble Falls and Lewis's home in Kyle.

37. As a result, Defendant routinely refused to pay Plaintiffs for compensable work time performing preparatory and concluding tasks, traveling during the continuous workday, and performing other work tasks during the continuous workday, which are all compensable work time under the Fair Labor Standards Act. Plaintiffs performed this off-the-clock work in many weeks in which they worked more than 40 hours, resulting in unpaid overtime.

38. Defendant has knowingly, willfully, or with reckless disregard carried out, and continues to carry out, its illegal pattern or practice of failing to pay overtime compensation to Plaintiffs.

## VI. FLSA COLLECTIVE ACTION ALLEGATIONS

39. Under 29 U.S.C. § 216(b), Named Plaintiff Preece seeks authorization to send notice of the

right to join this lawsuit to a group of similarly situated employees delineated as follows:

> **All current and former hourly-paid employees who worked on Defendant's bore crew or pipe crews at any time in the last three years.**

40. Named Plaintiff and the Potential Opt-In Plaintiffs performed the same or similar job duties as one another.

41. Further, Named Plaintiff and the Potential Opt-In Plaintiffs were denied overtime pay for compensable work tasks under the same policies and practices described above. Application of those policies and practices does not depend on the personal circumstances of the Named Plaintiff or those joining this lawsuit. Thus, the Potential Opt-In Plaintiffs are owed unpaid overtime for the same reasons as Named Plaintiff, without regard to their individualized circumstances.

## VII.   CAUSE OF ACTION: FLSA

42. During the relevant period, Defendant violated Section 7 of the FLSA, 29 U.S.C. §§ 207, by employing the Named Plaintiff and the Potential Opt-In Plaintiffs for workweeks longer than 40 hours without compensating them for all of their work in excess of forty hours per week at one-and-one-half times their regular hourly rates.

## XI. PRAYER FOR RELIEF

For the foregoing reasons, the Named Plaintiff prays that this Court:

a.   Enter an expedited Order authorizing notice to Potential Opt-In Plaintiffs under the FLSA, 29 U.S.C. § 216(b);

b.   Enter an Order awarding Plaintiffs declaratory and injunctive relief as necessary to prevent Defendant's further violations of the Fair Labor Standards Act;

c.   Award Plaintiffs damages for their unpaid overtime pay and an equal amount of liquidated damages, under 29 U.S.C. § 216(b);

d.   Award Plaintiffs the costs of this action;

e.  Award Plaintiffs reasonable attorney's fees;

f.  Award Plaintiffs Post-Judgment interest; and

g.  Grant such other relief as this Court deems just and proper.

Respectfully submitted,

**FAIR LABOR LAW**

By: */s/ Aaron Johnson*
Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
Ph: (512) 277-3505
Ph: (512) 277-3254

**ATTORNEY FOR PLAINTIFFS**